IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

General Casualty Company of    :
Wisconsin,

       Plaintiff,              :

    v.                         :       Case No. 2:10-cv-483

Nate Joseph, et al.,           :       MAGISTRATE JUDGE KEMP

       Defendants.             :


OPINION AND ORDER

Plaintiff General Casualty Company of Wisconsin ("General Casualty") filed this declaratory judgment action regarding coverage under a commercial automobile insurance policy it issued to KAZ Office Systems Specialists, L.L.C. This Court's jurisdiction arises from the parties' diverse citizenship. Defendants Nate Joseph, Brothers Three, LLC, and Vivian Rose have filed motions requesting the Court either to dismiss or stay this case. Responsive and reply memoranda have been filed. For the following reasons, the Court will grant the motion to dismiss or stay as to the claim for declaratory relief asserted against these defendants.

I. Background

By order dated January 18, 2011, the Court dismissed, without prejudice, General Casualty's claim in this case against State Automobile Mutual Insurance Company on grounds that it was not ripe for adjudication. The background of this case, as it relates to the current motions, was set forth in that order as follows.

    The events which triggered the filing of this lawsuit began with the death of Charles Rose, who died on October 10, 2006, as a result of an accident which

occurred on September 19, 2006.  His mother, Vivian
Rose, was appointed as the administrator of his estate,
and subsequently filed a civil action in the Franklin
County, Ohio Court of Common Pleas in order to recover
damages for his death.  The third amended complaint
filed in that case (a copy of which is attached to
General Casualty's complaint filed in this case)
alleges that on the date of his death, Mr. Rose was
working as an independent contractor and was loading
Masonite panels onto a cart owned by KAZ.  Ms. Rose's
complaint asserts that KAZ negligently failed to train
Mr. Rose or the others working that day about how to
secure the cart to a hydraulic lift or that they needed
to stand back when the cart was lifted into the air.
As a result, Mr. Rose pressed or leaned against the
cart as it was being lifted, the cart fell on him, he
suffered injuries including a broken leg and a
fractured hip, and, fourteen days later, he died from
those injuries.  The state court complaint also asserts
claims against Brothers 3, Inc. (identified in General
Casualty's amended complaint as Brothers 3, LLC) and
one of its owners, Nate Joseph, based on Mr. Joseph's
alleged negligence in operating the hydraulic lift.

        Prior to the accident, General Casualty had issued
a commercial automobile liability policy and an
umbrella policy to KAZ.  When the state court action
was filed, KAZ, Mr. Joseph, and Brothers 3 all tendered
their defense to General Casualty.  General Casualty
undertook KAZ's defense, is defending Mr. Joseph under
a reservation of rights, and has denied both coverage
and a defense to Brothers 3.  The state court case is
still ongoing.

        General Casualty has asked this Court to issue a
declaration that Mr. Joseph is not entitled to a
defense, or to coverage, on grounds that he is not an
"insured" within the meaning of the policies issued to
KAZ.  It seeks similar relief, for similar reasons,
against Brothers 3.  Finally, should the Court issue
the requested relief, General Casualty also wants the
Court to rule that Ms. Rose has no right to make any
claim under the policies in question.

Opinion and Order (#20), 1-2.

                II.  <u>The Motions to Dismiss or Stay</u>

Immediately following the Court's granting of State Auto's motion, Mr. Joseph, Brothers 3, and Ms. Rose requested the Court to delay or deny the entry of a declaratory judgment with respect to General Casualty's claims against them. In their joint motion, Brothers 3 and Mr. Joseph assert that General Casualty's claims against them should be dismissed for the same reason the Court dismissed General Casualty's claim against State Auto. According to these defendants, the claims against them are "indistinguishable from the claim General Casualty asserts against State Auto in Count III of the Amended Complaint in the instant case." Motion to Dismiss (#23), 4. Based on this, they assert that, because the question of State Auto's duty to insure them is before the Franklin County Court of Common Pleas, General Casualty's claims against them "are not yet ripe for adjudication." Id. Further, they argue that, because a motion to join General Casualty as a defendant or involuntary plaintiff has been filed in the state court action, "it would be premature for this Court to exercise jurisdiction in the instant case." Id. Despite this "ripeness" argument, these defendants proceed to analyze General Casualty's claims against them under the factors identified in Scottsdale v. Roumph, 211 F.3d 964 (6th Cir. 2000), and contend that the application of these factors "merit[s] a determination that the instant case should not proceed until the issues affecting insurance coverage and General Casualty's participation in the Franklin County Litigation are decided." Id. at 5.

In her motion, Ms. Rose clarifies initially that General Casualty is not seeking a declaratory judgment relating to her claim against KAZ and therefore, her response "is limited solely to the issue of Rose's potential claims against General Casualty for the negligence of Brothers 3 and/or Nate Joseph." Motion Instanter of Defendant Vivian Rose, 5. She also provides an

exhibit which she contends demonstrates General Casualty's
admission that Mr. Joseph met the definition of insured under its
policy and is therefore entitled to a  defense and to
indemnification.  This exhibit, a letter from General Casualty's
counsel to counsel for Brothers 3, states that "Mr. Joseph would
have been a permissive user of the truck in question and thus,
would be entitled to a defense concerning the claims brought by
Ms. Rose and the Estate of Charles Rose." See Exhibit 1 to
Motion Instanter of Defendant Vivian Rose.  Further, Ms. Rose
argues, without citation to Roumph or any other cases, that
"there are several factors a Federal Court is to consider when
deciding whether to exercise jurisdiction over a declaratory
judgment action" and contends that these factors warrant a stay
or dismissal of General Casualty's claims against her. Id. at 7.
In making this argument, Ms. Rose specifically incorporates all
arguments asserted by State Auto, Brothers 3 and Mr. Joseph.
Finally, she argues that General Casualty's claim against her
should be dismissed or stayed because it is not ripe in light of
the fact that she does not currently possess a direct claim
against General Casualty and may or may not ever possess one
depending on the resolution of the state court action.

     In its single response directed to both motions, General
Casualty contends that the Court's previous order cannot serve as
the basis for granting dismissal of its claims against Mr.
Joseph, Brothers 3, and Ms. Rose.  As General Casualty succinctly
states, "the grounds for dismissal of State Auto are wholly
unrelated to General Casualty's claims against Defendants."
Further, General Casualty addresses the five factors set forth in
Roumph and contends that four of these five factors cut in its
favor, thereby allowing this Court to decide this declaratory
judgment action despite the somewhat related issues pending
before the state court.  Finally, with respect to Ms. Rose's

-4-

"ripeness" argument, General Casualty cites to <u>Owens-Corning</u>
<u>Fiberglas Corp v. Allstate Ins. Co.</u>, 74 Ohio Misc.2d 159 (Ohio
C.P. 1993), as support for its position that the pendency of Ms.
Rose's underlying state court action provides a sufficient basis
to proceed with this action.

In reply, Brothers 3 and Mr. Joseph reiterate the arguments
set forth in their motion characterize General Casualty's
opposing argument as just "wrong."  In her reply, Ms. Rose, this
time citing to <u>Roumph</u>, argues in more detail that the factors
identified in that case weigh in favor of this Court's declining
to exercise jurisdiction over this declaratory judgment action.
Further, she cites to <u>D.H. Overmyer Telecasting Co. v. American</u>
<u>Home Assur. Co.</u>, 29 Ohio App.3d 31 (1986), to support her
position that General Casualty's claim against her is not ripe.

### III.  Applicable Law

There is no dispute that, under 28 U.S.C. §1332(a), this
Court has the jurisdiction to decide the issues raised by General
Casualty's complaint, and that, at least since the passage of the
Federal Declaratory Judgment Act in 1934, district courts have
had the power to issue declaratory relief.  Further, there are
some situations where the Supreme Court has determined that if a
district court has jurisdiction, it has an "unflagging
obligation" to exercise it.  <u>See Moses H. Cone Memorial Hosp. v.</u>
<u>Mercury Construction Corp.</u>, 460 U.S. 1, 15 (1983).  There has
been a good deal of slippage in that obligation, however, at
least in the context of actions for equitable relief where
complex federal constitutional issues and unresolved state law
issues co-exist, <u>see, e.g., Railroad Comm'n of Texas v. Pullman</u>
<u>Co.</u>, 312 U.S. 496 (1941), and, occasionally, in other sorts of
cases where considerations of comity and conservation of judicial
resources counsel in favor of abstention.  <u>See, e.g., Colorado</u>

-5-

River Water Conservation District v. United States, 424 U.S. 800
(1976).

However, in the context of declaratory judgment actions, the
Supreme Court has consistently recognized that obtaining the
issuance of a declaratory judgment from a federal court is not a
matter of right but a matter of discretion.  Thus, as early as
eight years after the Declaratory Judgment Act was passed, the
Supreme Court held that an insurance company which had properly
invoked federal court jurisdiction under the diversity statute
had no absolute right to an adjudication of its claims,
especially where state court litigation was pending and where
similar issues had been raised.  Rather, under those
circumstances, "[a]lthough the District Court had jurisdiction of
the suit under the Federal Declaratory Judgment Act ... it was
under no compulsion to exercise that jurisdiction" and a motion
to dismiss such a case is therefore "addressed to the discretion
of the court." Brillhart v. Excess Ins. Co. of America, 316 U.S.
491, 494 (1942).

Without purporting to list a comprehensive set of factors
for district courts to consider, the Brillhart court identified a
number of issues that should be taken into account in deciding
whether to exercise jurisdiction, including whether the issues
"can better be settled in the proceeding pending in the state
court," "whether the claims of all parties in interest can
satisfactorily be adjudicated in that proceeding, whether
necessary parties have been joined, [and] whether such parties
are amenable to process in that proceeding...." Id. at 495.  The
court also noted that "[o]rdinarily, it would be uneconomical as
well as vexations for a federal court to proceed in a declaratory
judgment suit where another suit is pending in a state court
presenting the same issues, not governed by federal law, between
the same parties." Id.  Proceeding under those circumstances was

-6-

described by the court as the "[g]ratuitous interference with the
orderly and comprehensive disposition of a state court
litigation," a result which was to "be avoided."  Id.

As it happened, however, the broad holding of Brillhart was
subsequently brought into question by decisions such as Colorado
River, a case in which the Supreme Court had stated that unless
"exceptional circumstances" existed, a district court should
ordinarily exercise the jurisdiction conferred upon it by
Congress.  A number of Courts of Appeals read that language as
limiting the discretion of a district court to stay or dismiss a
declaratory judgment action like the one filed in Brillhart (and
like the one pending here) to cases where some exceptional
circumstance existed, and not simply where there might be some
amount of overlap between the federal declaratory judgment action
and pending state court litigation.

The Supreme Court rejected this cramped reading of Brillhart
in Wilton v. Seven Falls Co., 515 U.S. 277 (1995).  Although the
Court acknowledged that, in Moses H. Cone Memorial Hospital,
supra, it had refused to extend the holding in Brillhart beyond
its original context - that is, to cases where relief other than
declaratory relief was being sought - in Wilton, it affirmed
Brillhart's premise that "[s]ince its inception, the Declaratory
Judgment Act has been understood to confer on federal courts
unique and substantial discretion in deciding whether to declare
the rights of litigants" and reaffirmed the holding in Brillhart
that district courts, even after Colorado River, retain broad
discretion to decline jurisdiction in declaratory judgment cases
and that a reviewing court may reverse that decision only for an
abuse of discretion.  Thus, there is a long history of judicial
approval of the careful exercise of discretion in determining
when, in the context of a declaratory judgment action which has
parallels in pending state court litigation, the district court

-7-

ought to proceed.

As in most cases, these general legal principles have been
distilled into a number of separate but related inquiries, all of
which are designed to assist the Court in determining the proper
outcome of this type of case. For example, as the Court of
Appeals noted Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968
(6th Cir. 2000), even before the decision in Wilton, there were
generally five factors which a district court should consider in
deciding how to exercise its discretion in these types of cases.
Those five factors are: (1) whether the judgment would settle the
controversy; (2) whether the action for declaratory judgment
would serve a useful purpose in clarifying the legal relations at
issue; (3) whether the remedy is being used merely for procedural
fencing or to provide an arena for a race to res judicata; (4)
whether the use of a declaratory action would increase the
friction between federal and state courts and improperly encroach
on state jurisdiction; and (5) whether there is an alternative
remedy that is better or more effective. See also Northland Ins.
Co. v. Stewart Title Guaranty Co., 327 F.3d 448, 453 (6th Cir.
2003); Grand Trunk Western R.R. v. Consolidated Rail Corp., 746
F.2d 323, 326 (6th Cir. 1984). The district court in Roumph
(with the apparent approval of the Court of Appeals) also
considered additional factors, including

> 1. whether the underlying factual issues are important
> to an informed resolution of the case;
>
> 2. whether the state trial court is in a better
> position to evaluate those factual issues than is the
> federal court; and
>
> 3. whether there is a close nexus between the
> underlying factual and legal issues and state law
> and/or public policy, or whether federal common or
> statutory law dictates a resolution of the declaratory
> judgment action.

-8-

Roumph, 211 F.3d at 968. The grant or denial of declaratory relief may be determined only after a full inquiry into all of these relevant factors. Allstate Ins. Co. v. Green, 825 F.2d 1061, 1065 (6th Cir. 1987).

### III. Analysis

As noted above, with respect to Brothers 3 and Mr. Joseph, General Casualty seeks a declaration that neither of these defendants qualifies as an "insured" under either the auto policy or the umbrella policy issued to KAZ by General Casualty. On the other hand, with respect to Ms. Rose, General Casualty seeks a declaration that she has no right to make any claims, supplemental or otherwise, for coverage under the policies issued by General Casualty for the negligence of Mr. Joseph or Brothers 3. Further, General Casualty seeks a declaration that Ms. Rose is "forever barred from claiming benefits under said policy based on the alleged negligence of Defendant Brothers 3, LLC or Nate Joseph as set forth in the Franklin County lawsuit." Amended Complaint (#12), ¶¶42-43.

Initially, the Court notes that, as pleaded, General Casualty's claims for declaratory relief against Ms. Rose arise from its claims for relief against Brothers 3 and Mr. Joseph. As a result, if the Court were to decline to issue the declaratory relief sought by General Casualty against Mr. Joseph and Brothers 3, General Casualty would have no basis for pursuing its claim against Ms. Rose. Ms. Rose recognizes as much in her motion. Further, recognizing the connection between the claims, Ms. Rose incorporates by reference in her motion the arguments made by those parties in urging this Court to decline to exercise jurisdiction. General Casualty also addresses the issues surrounding this Court's exercise of jurisdiction jointly with respect to these three defendants. Consequently, because, as set

-9-

forth below, the Court will grant the motion to dismiss with respect to the claims against Mr. Joseph and Brothers 3, there is no need for the Court to consider separately the claims against Ms. Rose.

At the outset, however, the Court finds it necessary to address the "ripeness" argument raised by Brothers 3 and Mr. Joseph. As the Court understands their argument, they are suggesting that, because the state court has not issued a decision on State Auto's duty to insure them, General Casualty's claims against them here are not ripe. This appears to be an attempt to analogize the status of General Casualty's claim against them to that of General Casualty's claim against State Auto in an effort to rely on the Court's dismissal of that claim. If this is indeed their intention in asserting this argument, it indicates a misunderstanding of the Court's prior reasoning. As the Court previously explained, it construed the relief General Casualty sought from State Auto, as limited by General Casualty, to the following:

> ...that if the state court determines that Mr. Joseph is an insured under the State Auto policy, General Casualty is entitled to be reimbursed for the expenses it has incurred in defending Mr. Joseph in the state court litigation.

Opinion and Order (#20), 11-12.

Because General Casualty had specifically disclaimed its intention to litigate the issue of whether State Auto owed coverage and had limited its claim to one seeking reimbursement, the Court concluded that that issue – reimbursement - could not be decided before the state court issued a ruling on coverage. As the Court explained, the issuance of a state court ruling was a precondition for deciding the reimbursement issue and without such a ruling, the reimbursement claim was not ripe. The Court was not suggesting, as Brothers 3 and Mr. Joseph seem to have

-10-

interpreted, that because the state court had not issued a ruling
on coverage, the ripeness doctrine prevented this Court from
issuing a ruling on coverage.  Rather, the Court recognized the
difference between the unripe reimbursement issue and a request
by General Casualty to decide the coverage issue under the State
Auto policy - an issue which would have required an analysis of
the various factors relating to the propriety of declaratory
relief.  Consequently, the Court will not dismiss General
Casualty's claims against Mr. Joseph and Brothers 3 on grounds of
ripeness.  Instead, the Court will proceed to consider General
Casualty's request for declaratory relief on the coverage issue
against these defendants under the five factors set forth in
Roumph.  See also Grand Trunk W. R.R. Co. v. Consol. Rail Co.,
746 F.2d 323 (6th Cir. 1984).

  1.  Whether a Declaratory Judgment Will Settle the Controversy

     The first factor for the Court to consider is whether a
district court judgment would settle the controversy.  Several
district courts, as well as the Sixth Circuit, have acknowledged
that two distinct lines of precedent have developed in recent
years regarding this factor.  One line of cases, and the one
relied upon by General Casualty here, holds that this issue is
limited to consideration of whether a declaratory relief action
will settle the insurance coverage issue not being addressed in
the underlying state court action.  See Northland Ins. Co. v.
Stewart Title Guar. Co., 327 F.3d 448 (6th Cir. 2003); Allstate
Ins. Co. v. Green, 825 F.2d 1061 (6th Cir. 1987); and State Farm
Fire and Casualty Co. v. Odom, 799 F.2d 247 (6th Cir. 1986); see
also Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 555 (6th Cir.
2008).  The other line of cases has required that the declaratory
judgment action settle the underlying controversy in the state
court.  Travelers Indem. Co. v. Bowling Green Prof'l Assoc., 495
F.3d 266 (6th Cir. 2007); Bituminous Cas. Corp. v. J & L Lumber

-11-

Co., 373 F.3d 807 (6th Cir. 2004).

In Flowers, the Sixth Circuit explained that this divergence arises on one hand from "competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." Flowers, 513 F.3d at 555. On the other hand, the Court noted that the different results could be explained by "their different factual scenarios." Id. For example, in Bituminous, the Sixth Circuit noted that it had "focused on the fact that the insurance coverage controversy rested on fact-based questions of state law regarding whether the plaintiff in the state action was actually an employee of the defendant." Id. at 556. The Bituminous court found it significant that the same factual issue was being considered in two separate state court proceedings in addition to the federal declaratory judgment action. Id.; see also West American Ins. Co. v. Prewitt, 208 Fed.Appx. 393, 396-397 (6th Cir. 2006) (unpublished) ("[In Bituminous] [t]his Court's determination that exercising jurisdiction was improper, relied heavily on there being a state court already considering the same issue."); Owners Ins. Co. v. Elder Heating & Air, Inc., 2010 WL 1418734, *2 (W.D. Ky. April 7, 2010)("In Bituminous, the Court was faced with an action in which determination of the insurance coverage issue rested on a fact-based question of state law was already being considered in two other state court proceedings.") Also significant to the Bituminous court was the fact that the plaintiff in the state court action was not a party to the declaratory judgment action which prevented any federal court judgment from being binding as to him or res judicata in the state tort action.

At the same time, with respect to the Northland line of cases, the Sixth Circuit explained that the exercise of jurisdiction is proper where the plaintiff [insurance company]

-12-

"'[is] not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend [is] before the state court.'" <u>Flowers</u>, 513 F.3d at 556 <u>quoting</u> <u>Northland</u>, 327 F.3d at 454. The <u>Flowers</u> court recognized that a further distinction from <u>Bituminous</u> arises from scenarios "involv[ing] a legal, not factual dispute not requir[ing] the district court to inquire into matters being developed through state court discovery." <u>Id</u>.

As discussed above, the controversy in this case is over insurance coverage. General Casualty seeks a declaration that it has no duty to defend or indemnify Mr. Joseph or Brothers 3 based on the definition of "insured" in its general and umbrella policies issued to KAZ Office Systems. None of the parties address the substance of this first factor in much, if any, detail. In their motion, Brothers 3 and Mr. Joseph simply state that, because of the current posture of the underlying state case, this Court's exercise of jurisdiction "may only serve to create competing declarations of the parties' rights and obligations." To the contrary, in the three sentences of its response it devotes to this factor, General Casualty argues that the exercise of jurisdiction is proper because the issue of its insurance coverage obligation is not being addressed in the state court.

As the Court views the current action, it presents issues identified as important by the Sixth Circuit in both the <u>Bituminous</u> and <u>Northland</u> lines of cases. For example, General Casualty has named the tort claimant in the state court action, Ms. Rose, as a defendant here, an event that had not occurred in <u>Bituminous</u>. In fact, General Casualty's amended complaint appears to have named all of the parties involved in the underlying state action as defendants in this action, although, based on the Court's previous order, State Auto is no longer a

party here. General Casualty, however, is not currently a party
to the state court action, similar to Northland, although there
is no dispute here that Mr. Joseph and Brothers 3 have moved to
join General Casualty as a defendant or involuntary plaintiff in
that litigation and are awaiting a state court ruling on that
motion. Most importantly, however, as this Court has already
recognized, and as was significant to the Bituminous court, the
same factual issues regarding Mr. Joseph's employment status must
be addressed in both this action and the state court action. As
stated by the Court in its previous order, "there are motions
pending in the Franklin County Court of Common Pleas which raise
the issue of whether Mr. Joseph was an employee or 'borrowed
servant' of KAZ (in which case he probably would qualify as an
insured under the policies at issue) or whether he was an
independent contractor." Opinion and Order (#20), 3.

        In considering this factor, the Court is mindful of the
Sixth Circuit's admonition in insurance coverage diversity cases
that, "'declaratory judgment actions seeking an advance opinion
on indemnity issues are seldom helpful in resolving an ongoing
action in another court.'" Bituminous, 373 F.3d at 812 quoting
Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins.
Co., 791 F.2d 460, 463 (6th Cir. 1986). Rather, "[s]uch actions
... should normally be filed, if at all, in the court that has
jurisdiction over the litigation which gives rise to the
indemnity problem. Otherwise confusing problems of scheduling,
orderly presentation of fact issues and res judicata are
created." Id.

        Taking all of the above into account, the Court finds that
the first factor weighs against the exercise of jurisdiction.
Similar to Bituminous, resolution of the insurance coverage issue
here "hinges" significantly on Mr. Joseph's employment status, a
very fact-intensive question of state law and one currently

-14-

before the state court.  Other courts have found the existence of
a significant or "key" factual issue governed by state law to
weigh heavily against the exercise of jurisdiction.  <u>See</u>, <u>e.g.</u>,
<u>Owners Insurance Co.</u>, 2010 WL 1418734.  Further, the fact that
the issue of Mr. Joseph's employment status is being considered
by the state court undeniably presents the potential for
inconsistent judgments and presents a risk of complicating
underlying issues of liability.  Additionally, given the Court's
dismissal of State Auto as a defendant based on General
Casualty's framing of its request for relief, not all of the
parties to the underlying state action are currently parties to
this action.  Further, although General Casualty currently is not
a party to the state court proceeding, there is a pending motion
to join.  For all of these reasons, the Court cannot conclude
that a declaration of insurance coverage would resolve the
controversy.

2.  <u>Whether the Declaratory Judgment Action Would Serve a Useful
Purpose in Clarifying the Legal Relations at Issue</u>

The second factor for the Court to consider is whether the
declaratory judgment will clarify the legal relations at issue.
As with the first factor, a split in precedent exists with
respect to this factor.  <u>Flowers</u>, 513 F.3d at 557.  The <u>Northland</u>
line of cases holds that the district court's decision must only
clarify the legal relationships presented in the declaratory
judgment action.  <u>Id</u>.  By contrast, the <u>Travelers</u> and <u>Bituminous</u>
line of cases holds that the district court's decision must
clarify the legal relationships in the underlying state action.
<u>Id</u>.  Again, the parties briefs do not address this factor in much
detail.  Essentially, Brothers 3 and Mr. Joseph argue, without
analysis, that a declaratory judgment from this Court would not
serve to clarify the legal relations at issue.  General Casualty,
relying, of course, on the <u>Northland</u> line of cases, contends that

-15-

a declaratory judgment would clarify the issues because it would settle the specific dispute over its insurance coverage obligations.  General Casualty also asserts that, because it has taken no position with respect to whether State Auto owes coverage to these defendants - another issue being considered by the state court in a consolidated case - that is the only issue to be resolved here.  General Casualty contends that this circumstances eliminates the potential for confusion or inconsistent results.

In considering this factor, the Court notes that this factor addresses both the clarification of the legal relations at issue and the usefulness of that clarification.  See, e.g., Westfield Ins. Co. v. Hall, 2011 WL 1518216 (E.D. Ky. April 18, 2011) (at the same time, any clarification must serve a useful purpose).  Here, the Court cannot conclude that a declaratory judgment would either clarify the legal relationships or serve a useful purpose.  In order for this Court to conclude that General Casualty has no duty to defend or indemnify either Brothers 3 or Mr. Joseph, it would have to find that they do not fit the definition of employee under the insurance policies at issue.  Such a finding would require an examination of the facts surrounding Mr. Joseph's employment status - again, a question before the state court.  The state court presumably could reach a different conclusion on this issue and this presents the potential for conflict.  In that event, a declaratory judgment issued here would have neither provided clarification nor proven to be useful.  Given this uncertainty, this factor weighs against exercising jurisdiction.

3.  Whether the Declaratory Remedy is Being Used Merely for the Purpose of "Procedural Fencing" or "to Provide and Arena for a Race for Res Judicata."

The third factor for the Court to consider is "whether the

-16-

declaratory judgment is motivated by 'procedural fencing' or a
race for res judicata." <u>Flowers</u>, 513 F.3d at 558.  This factor
is intended to "preclude jurisdiction for 'declaratory plaintiffs
who file their suits mere days or weeks before the coercive suits
filed by a 'natural plaintiff' and who seem to have done so for
the purpose of acquiring a favorable forum." <u>Id</u>.  <u>quoting</u>
<u>AmSouth Bank v. Dale</u>, 386 F.3d 763, 788 (6th Cir. 2004).  Courts
consider the question of whether the declaratory plaintiff filed
"in an attempt to get [the] choice of forum by filing first."
<u>Id</u>.  The Sixth Circuit has instructed, however, that courts
should be reluctant to impute an improper motive to a declaratory
plaintiff when there is no supporting evidence in the record.
<u>Id</u>.  At the same time, the Sixth Circuit has agreed with a
district court conclusion that, although there was no evidence of
bad faith filing, because the state court had to consider the
same issue raised in federal court, this indicated the
declaratory plaintiff's attempt to obtain a favorable ruling in
federal court rather than risk an unfavorable state court result.
<u>See</u> <u>U.S. Fire Ins. Co. v. Abex Aluminum, Inc.</u>, 161 Fed.Appx. 562
(6th Cir. 2006).  Generally, however, when the declaratory
plaintiff has filed suit after the state court litigation has
been underway, courts in this circuit give the plaintiff "the
benefit of the doubt that no improper motive fueled the filing of
[the] action." <u>Bituminous</u>, 373 F.3d at 814.  As courts have
recognized, jurisdiction should not be denied to a declaratory
plaintiff who simply has chosen a federal jurisdiction over a
state court, "a choice given by Congress." <u>Odom</u>, 799 F.2d at 250
n.1.

    As with the other factors, none of the parties address this
factor in significant detail.  Mr. Joseph and Brothers 3 provide
nothing more than a bare assertion that General Casualty filed
this action to obtain a judgment in this Court before a decision

-17-

could issue from the state court.  In response, General Casualty notes that it did not file this action for nearly two years after the state court action was filed.  Given the parties' treatment of this issue, there is not much in the way of evidence from which the Court could conclude that General Casualty was forum shopping or sought to start a race to judgment with the state court.

At the same time, however, the Court recognizes that while the precise issue of the extent of General Casualty's coverage currently is not before the state court, several factual issues which this Court would be required to consider in this action are issues that will be required to be addressed by the state court – specifically, the issues surrounding the employment status of Mr. Joseph.  Further, prior to General Casualty's refinement of its claim against State Auto providing the basis for this Court's dismissal of the declaratory claim against State Auto, General Casualty had sought a ruling on State Auto's coverage obligation, an issue that is more squarely before the state court.

Taking all of the above into account, the Court concludes that this factor does not weigh for or against the exercise of jurisdiction.  That is, this factor under the circumstances presented here is merely neutral.  In reaching this conclusion, the Court notes that other district courts have found this factor to be neutral even when there is no suggestion of any attempt to obtain a more favorable ruling from a federal court.  See, e.g., Owners Ins. Co., 2010 WL 1418734, *4 (even where "no evidence of procedural fencing or a race for res judicata is presented, then this factor is neutral, and does not weigh in favor of or against exercising jurisdiction."); see also Westfield Ins. Co., 2011 WL 1518216; Royal Surplus Lines Ins. Co. v. U.S. Four, Inc., 614 F.Supp.2d 875, 879 (S.D Ohio 2007).  This latter view has been endorsed by the Sixth Circuit.  Travelers, 495 F.3d at 272.

-18-

   4.   <u>Whether the Use of a Declaratory Action Would Increase
Friction Between Federal and State Courts and Improperly Encroach
                Upon State Jurisdiction</u>

     The fourth factor for the Court to consider is whether the
use of a declaratory action would increase friction between
federal and state courts and improperly encroach upon state
jurisdiction.  As discussed above, the Sixth Circuit considers
three sub-factors when considering this fourth actor.  General
Casualty concedes that two of the three sub-factors to be
considered here weigh against the exercise of jurisdiction
resulting in this fourth factor in its entirety weighing against
the Court's exercise of jurisdiction.  Specifically, General
Casualty does not dispute that the state trial court is in a
better position to evaluate the underlying factual issues
important to an informed resolution of the case or that there is
a close nexus between the underlying factual and legal issues and
state law or public policy.

     With respect to the first sub-factor, however, General
Casualty contends that the facts needed to resolve the insurance
coverage issue here are independent of the facts involved in the
state court action.  In making this argument, however, General
Casualty recognizes that Mr. Joseph's employment status is a
factual issue important to both cases.  Despite General
Casualty's downplaying of the significance of this factual issue,
the Court does not believe that factual issue deserves such
casual treatment.  As discussed above, this issue presents, among
other things, the potential for conflicting findings.  The Sixth
Circuit has found the exercise of jurisdiction inappropriate
where "the resolution of the issue raised in federal court will
require making factual findings that might conflict with similar
findings made by the state court.  <u>Flowers</u>, 513 F.3d at 560;
<u>Travelers</u>, 495 F.3d at 272.  Nevertheless, because General

                              -19-

Casualty concedes that this fourth factor as a whole weighs
against the exercise of jurisdiction, the Court will so conclude
without further discussion.

5. <u>Whether There is an Alternative Remedy Which is Better or
More Effective</u>

The final factor for the Court's consideration is whether
there is an alternative remedy which is better or more effective.
General Casualty concedes that this action is based on diversity
jurisdiction and no federal question is involved. However, it
contends that, because Ohio law provides clear precedent on the
issue presented here, this Court in not an inferior forum to
resolve the coverage issue. Brothers 3 and Mr. Joseph appear to
argue that, based on concerns of judicial economy and
conservation of economic resources, a better remedy exists
through General Casualty's participation in the underlying state
litigation.

One of the alternative remedies available to General
Casualty is to seek a declaratory judgment in state court. <u>See</u>
Ohio Revised Code Chapter 2721, the Ohio Declaratory Judgment
Act. This seems like a better option here given that the state
court will decide the underlying action. Further, because the
issue of Mr. Joseph's employment status involves questions of
state law only, the state court also is better situated to
resolve the case. In considering this alternative, the Court is
mindful of the Sixth Circuit's concern regarding "'declaratory
judgments in federal court when the only question is one of state
law and when there is no suggestion that the state court is not
in a position to define its own law in a fair and impartial
manner.'" <u>Bituminous</u>, 373 F.3d at 816-817 <u>quoting</u> <u>Am. Home
Assur. Co. v. Evans</u>, 791 F.2d 61, 63 (6th Cir. 1986). The Court
finds this concern to be of greater magnitude in a case where, as
here, a critical factual issue has been developed in the state

-20-

court through the course of discovery and motions practice. Consequently, the Court finds that this final factor also weighs against exercising jurisdiction.

In summarizing the above factors, the Court notes that the Sixth Circuit has not provided a formula for the proper balancing of these factors. However, at least four of the above five factors weigh against the exercise of jurisdiction here. A declaratory judgment in this course would not settle the controversy or resolve all of the underlying legal obligations. Further, as General Casualty concedes, the Court's resolution of the issues presented by this case would result in increased friction between state and federal courts. Finally, General Casualty's pursuit of declaratory relief in state court presents a superior remedy. Consequently, General Casualty's claims against Mr. Joseph and Brothers 3 will be dismissed without prejudice to refiling in state court.

Finally, the Court notes that General Casualty also named as a defendant KAZ, the named insured on the insurance policies at issue. According to the docket, however, General Casualty has never served defendant KAZ with either the original or amended complaint. The preliminary pretrial order, filed prior to the amended complaint, states that KAZ has not appeared in this case and that General Casualty will file a return of service with respect to this defendant. Given that the Court has declined to exercise jurisdiction over this declaratory judgment action, there is no reason for the Court to direct service on KAZ. Consequently, the complaint will be dismissed without prejudice as to defendant KAZ. Because no other claims or defendants remain, this case will be dismissed, without prejudice, in its entirety.

IV.  Conclusion and Order

For the reasons stated above, the motions to dismiss or stay

-21-

(#23 and #24) are granted.  Plaintiff's claims against these defendants are dismissed without prejudice to refiling in state court.  Further, the complaint is dismissed without prejudice as to defendant KAZ.  Because no other claims or defendants remain, this case is dismissed, without prejudice, in its entirety.

/s/ Terence P. Kemp
United States Magistrate Judge